**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ADRIAN GARCIA,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **CIVIL ACTION NO. _____** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| | § | |
| **DRONEUP TEXAS, LLC,** | § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**COMES NOW**, Plaintiff, Adrian Garcia (hereinafter "Plaintiff"), and complains of

Defendant, DroneUp Texas, LLC (hereinafter "Defendant"), and would respectfully show unto the

Court as follows:

**I.**

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the federal claims asserted herein pursuant to 28

U.S.C. §§1331 and 1343.  In addition, Plaintiff invokes this Court's jurisdiction pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. 2000-e, et seq. (hereinafter "Title VII") and

pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a (hereinafter

"Section 1981").

2.      Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28

U.S.C. §1391, because a substantial part of the events or omissions giving rise to the claim

occurred in this judicial district.

## II.

## PARTIES

3.     Plaintiff is a Hispanic American male citizen of the United States and a resident of Dallas County, Texas.  At all times relevant hereto, Plaintiff was an employee of Defendant. Plaintiff has been subjected to unlawful employment practices committed in Dallas County, Texas by employees and agents of the Defendant.

4.     Defendant is a domestic limited liability company.  Defendant may be noticed of this lawsuit by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## III.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     On November 9, 2023, Plaintiff filed a charge of employment discrimination against Defendant with the Dallas District Office of the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 days of the last discriminatory act.  Any allegations in this action which pertain to events that occurred after 300 days of the last discriminatory act pertain to allegations of continuing violation.

6.     Plaintiff was issued a "Notice of Right to Sue" concerning the charge by letter dated October 7, 2024, entitling him to institute a civil action within 90 days of the date of receipt of said notice.  This action is timely filed.

## IV.

## FACTS AND CAUSES OF ACTION

7.     This action is authorized and instituted pursuant to Title VII and Section 1981. This is a legal proceeding for legal and/or equitable relief available to secure the rights of the

Plaintiff under these statutes.

8.    Beginning on or about February 7, 2022, and continuing through May 15, 2023, Plaintiff was repeatedly subjected to discrimination based on race/national origin, as well as retaliation and harassment/hostile work environment in violation of Title VII and Section 1981.

9.    Plaintiff contends the following:

I began my employment with DroneUp Texas, LLC ("DroneUp" or the "Company") on approximately November 7, 2022, as a Flight Engineer at the Company's Dallas Hub. Within one month of starting my employment, I noticed that Company management treated me (a Hispanic man) and other non-white employees differently than they treated white employees.

I interviewed for a position as a Flight Engineer at the Company's Arkansas hub on February 7 and 9, 2022, and again on February 18 with the VP of Operations, John Ford (a white man). The interviews went well and I was told I could start in Arkansas and move to Texas when the Company expanded there, but I later received an email stating I would have to wait to start work until the Company expanded into Texas.

I interviewed for the position of Drone Trainer on August 19, 2022, and despite having four years of drone training experience, was not offered the position. I interviewed for the position of Regional Flight Compliance Manager on September 13, 2022, but was not offered the position. I interviewed again for the position of Flight Engineer on October 12, 2022, at the Company's Dallas hub and was hired for the position. After I started in this position, I found out others were hired before although they had less or no experience or did not have a degree, such as Daniel Terrell, Walker Brown, Mark Truty, Mitchell Kramer, Carter Firquain, and Ryan Woodie. All are white and were hired for the Arkansas locations. I have a Bachelor's degree in aviation management, five years' experience, and a pilot's license.

In December 2022, shortly after I began my employment, I began noticing my manager, Colin Hensley (a white man), and supervisor, Scott Clem (a white man), making discriminatory comments and creating a hostile work environment. Another flight engineer, Jorge Diaz (a Hispanic man), noticed similar issues with Mr. Hensley and Mr. Clem. For example, Mr. Diaz told me that Mr. Clem told him he didn't like Black people moving into his neighborhood. On another occasion, Mr. Clem asked me if I used to be a teacher. I told him that I had, and he said his wife is a teacher. Mr. Clem went on to say that "these kids coming from low-income areas are causing problems." Mr. Hensley also made discriminatory comments, including making jokes about transgender people and transgender kids specifically.

On January 29, 2023, I texted the regional manager, Dennis Bruce, about my concerns over Mr. Clem and Mr. Hensley. He did not respond. Shortly after that, Mr. Hensley called me and I asked why I talked to Mr. Bruce. I told him about Mr. Clem's actions and he defended Mr. Clem.

On February 1, 2023, Mr. Hensley had a heated exchange with Mr. Diaz during a team meeting over Zoom after Mr. Diaz asked how to handle dealing with a leader who was always demeaning. Mr. Hensley took offense and asked Mr. Diaz if there was something he wanted to talk about in private. Mr. Hensley told everyone to get off the Zoom meeting and made Mr. Diaz stay on meeting, along with shift lead Chris Taff (a white man), and Mr. Clem, who were with Mr. Hensley in person. Mr. Diaz called me after he spoke with them and said Mr. Hensley threatened him with physical violence, asking him, "Do you want to take this offline?" Hearing this made me so uncomfortable that I texted Mr. Bruce about it. Mr. Bruce later called me and I told him about these issues and asked if I could switch hubs. He did not seem to take the issues I raised very seriously but said I could switch hubs and that I should report to the Murphy location on Friday, February 3, 2023.

On February 3, 2023, I reported the Murphy location as instructed. Mr. Hensley, who was not assigned to

the Murphy hub, showed up that day at the Murphy location to harass and intimidate me. Another flight engineer, Gary Kirtley (a white man), witnessed this. I called Mr. Bruce to tell him about this and ask what I should do. "Do I have to go to HR?" I asked. He told me to call him before work the next day, which was Monday, February 6, 2023.

On February 6, 2023, before I was able to call him, I received a call from Mr. Bruce telling me to take the day off. He texted me later that day and said to meet him in the office on February 7, 2023.

On February 7, 2023, I met with Mr. Bruce in the office and told him what I had been dealing with concerning Mr. Hensley. I told him that on January 4, Mr. Clem told another employee that we had been "butting heads" and that "Adrian needs to be subordinate" to him. I also told him about unsafe working conditions that Mr. Clem and Mr. Hensley were subjecting us to. Mr. Bruce appeared to take notes on his laptop and said this information would go to HR, but I never heard from anyone in HR. Mr. Bruce said Mr. Hensley still wanted me working for him at the Garland hub, but I told him I did not feeling comfortable working with Mr. Hensley. Mr. Bruce was not supportive and reluctantly told me I could go back to the Murphy location.

On February 9, 2023, while working at the Murphy location, I was told by my new manager, Massiel Arias (a Hispanic woman), that I was no longer allowed to fly the drone. At first I was confused, as she did not provide any explanation as to why. Nevertheless, I was just glad to be away from both Mr. Hensley and Mr. Clem, and there were only a couple of days where the drone was operational due to weather conditions and technical difficulties.

On February 20, 2023, I applied for a business development position with the Company in Dallas, but I did not get an interview. On February 22, 2023, I asked Ms. Arias about other job opportunities, such as the enterprise side of the Company, and she said she would talk to Mr. Bruce about it. On February 23, 2023,

Ms. Arias told me that I was "not in standard" to fly and that I did not qualify for any job openings on the enterprise side of the Company. She also said that she, Mr. Bruce, and her peers talked about the circumstances that resulted in my leaving the other hub. I assume she was referring to my complaints against Mr. Clem and Mr. Hensley about discrimination, a hostile work environment, and unsafe work conditions.

On February 24, 2023, I asked Ms. Arias again about enterprise job opportunities. She explained that the reason I was considered "not in standard" was because of how I left the other hub, basically admitting that the Company was retaliating against me because I spoke up about discrimination, a hostile work environment, and unsafe work conditions. She said management wanted me to go back and work with Mr. Hensley and Mr. Clem even after this, but I refused to. Because of this, they were classifying me as "not in standard" and preventing me from transferring. Other employees transferred without any issues, but not me. For example, Michael Brown (a white man), was allowed to switch hubs without any issue. Jeff Sims (a white man), who went to HR and complained about working conditions, was allowed to switch hubs without any problems.

Around this same time, I received a negative monthly evaluation from Ms. Arias. Up until now, I was not aware that the Company even did evaluations. This was the first time I had seen or reviewed an evaluation. I asked coworkers at other locations and they said they had not seen or reviewed evaluations either.

Also around this time, three other Hispanic employees were intimidated and pressured to resign from other hubs. Juan Torres (a Hispanic man) was originally the supervisor at the Murphy location. He was forced by Mr. Bruce and Mr. Ford to go to the Mesquite location and was replaced by Taylor Humphrey (a white woman) at Murphy. Mr. Torres was later forced out of Mesquite and was replaced by Alex Treece (a white man). Jose (last name unknown) and Vincent (last name unknown), both Hispanic men, were also

intimidated and pressured to resign from other hubs.

On February 28, 2023, I had a meeting with Mr. Bruce, Ms. Arias, flight training manager Rob Neuner (a white man), and flight instructor Jordan Nicholson (a white man) about retraining. I had to do retraining even though that is not company policy. Another employee, Gary Kirtley, missed two weeks of work for paternity leave and did not have to do retraining. Mr. Bruce was very angry and yelled at me during this meeting.

On March 1, 2023, Mr. Diaz called me and said Mr. Hensley and Mr. Clem were spreading untrue statements about me. For example, Mr. Hensley said that once during a drone flight, I put the controller down (which was not allowed per procedures) and said I did not know what to do and that I needed training. That never happened. Mr. Hensley said that to the flight training manager, Rob Neuner, and because of that I had to do additional, extensive training, more than what they were already requiring of me.

On March 2, 2023, I talked to HR about everything I had been dealing with. Charish Lee (a Black woman) in HR emailed me and told me an investigation would be conducted. To my surprise, Ms. Lee said this was the first time she had heard about my issues with Mr. Hensley and Mr. Clem. On March 10, 2023, I had a meeting with Mr. Bruce and a representative from HR, Thomas Campbell (a white man). During this meeting, I asked my negative evaluation to be voided, and Mr. Bruce agreed to that. To my knowledge, he never voided my evaluation. I also expressed interest in training for enterprise job opportunities, but they never followed up with me. They did offer enterprise training to Mr. Brown and Mr. Kirtley, and Mr. Brown was able to interview for a promotion.

On March 15, 2023, Mr. Diaz resigned and told me he mentioned Mr. Hensley and Mr. Clem's racist, homophobic remarks and unfair treatment in his resignation letter.

On March 16, 2023, Ms. Arias said she needed a volunteer to go to another hub. I volunteered, but she did

not allow me to switch and allowed another employee, Alex Gates (a white woman), to go instead.

On March 17, 2023, Ms. Lee called me and asked me a series of questions, including if I had heard of any racist comments being made. I told her I had. I heard from other employees that HR was calling and asking similar questions of employees at Garland and Rowlett hubs. On March 20, 2023, I called Ms. Lee to tell her another racist comment I remembered Mr. Clem making. I also mentioned other issues I was dealing with. To my knowledge, HR never followed up on or resolved these issues.

On March 23, 2023, Mr. Hensley resigned. HR never posted his position, but management recommended someone internally to replace him.

After this, a culture survey was sent out to employees by the VP of HR, Sarah Lewis. In my response, which I submitted on or around April 24, 2023, I complained about the discrimination, retaliation, unequal treatment, and hostile work environment I experienced. A day or two later, I overheard Ms. Humphrey and Mr. Brown making fun of employees who complain to HR.

On May 2, 2023, I applied for a shift lead position. I overheard a conversation where coworkers said that HR would be doing interviews instead of management recommending employees. I was never interviewed by HR.

On May 3, 2023, Mr. Ford and Mr. Bruce were at our Murphy hub as we were preparing to do a school event when Mr. Ford made an inappropriate comment toward me in front of my coworkers. Out of nowhere, Mr. Bruce asked if I had to do background check with Dallas ISD, where I previously worked. Mr. Ford said, "That's probably why he's here," implying that I did not pass the background check and that was why I was working for them and not DISD. Ms. Humphrey, Ms. Arias, Mr. Brown, and Ben Marghoub all witnessed these comments and laughed. The next day, Mr. Brown said to me, "John Ford is funny right? He joked about you and kids," referring to Mr. Ford's comments suggesting I was a predator unfit to work

with children.

On May 15, 2023, Mr. Ford and Ms. Lewis informed me and other employees that we were being laid off due to "downsizing." Specifically, they said they had to take a look at the company and cut resources. I am aware of three other flight engineers who were laid off that day: Austin Gurule (a Hispanic man), Alex Gates (a white woman), and Joey/Joseph (a man, race/ethnicity unknown). Mr. Gurule was involved in a drone crash that happened at the end of March at the Company's location in The Colony, along with supervisor Zechariah Friend (a white man). Mr. Friend was not laid off and was actually promoted a few days after the crash.

To this day, months after I was terminated in retaliation for reporting discrimination, I am still being intimidated and harassed by this Company. At 3:30 p.m. on October 17, 2023, two coworkers and I were working out of the parking lot at a Frisco, Texas Walmart for my current job when John Ford, DroneUp's Vice President of Operations, saw me. I went inside to use the bathroom. He followed me inside the store and inside the restroom, making me feel very uncomfortable. He walked out after me without purchasing anything.

I never faced disciplinary action by the Company because I never did anything wrong. I witnessed managers making discriminatory comments and engaging in inappropriate behavior that created a hostile work environment and I spoke up, reporting them to HR. And I was not the only employee to do so. Instead of addressing the source of the problem, the Company retaliated against me until they could get rid of me— using the layoff as an excuse to do so.

10.     The source of Defendant's actions against Plaintiff as set out above was racial/national origin animus, retaliation, and harassment based on racial/national origin animus.

Any other reason Defendant asserts for Plaintiff's termination is mere pretext.

11.    Plaintiff suffered emotional distress and depression for being discriminated against and harassed based on his race/national origin, as well as retaliated against, in the form of loss of benefits, terms, conditions and privileges of employment.

12.    Defendant's proffered business reason(s) for Plaintiff's termination are mere pretext for discrimination based on Plaintiff's race/national origin, harassment based on race/national origin, and retaliation.

13.    On information and belief, the Defendant followed a policy, pattern and practice of discrimination against Plaintiff based on his race/national origin, and retaliation, in violation of Title VII and Section 1981. The discriminatory practices and policies include, but are not limited to, discriminating against Plaintiff in the terms, conditions, and privileges of employment based on his race/national origin.

14.    Plaintiff was subjected to a hostile work environment and adverse employment actions by the Defendant based on Plaintiff's race/national origin.

15.    Plaintiff has suffered compensatory damages as the direct result of the Defendant's discriminatory and harassing treatment. Plaintiff would further show that the Defendant's conduct was done willfully and with malice and that he is entitled to liquidated and exemplary damages.

16.    The Defendant's conduct toward Plaintiff caused him severe emotional distress, pain and suffering and/or other nonpecuniary losses, for which Plaintiff seeks past and future compensatory damages.

17.    The amount of damages which Plaintiff seeks herein exceeds the jurisdictional minimum of this Court.

18.     All conditions precedent to the filing of this action have occurred or have been fulfilled.

## V.

## <u>DAMAGES</u>

19.     Plaintiff seeks statutory damages, back pay and front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled pursuant to Title VII and Section 1981. Plaintiff is entitled to actual damages, including pecuniary damages, mental anguish or emotional pain and suffering, inconvenience, and loss of enjoyment of life in the past and in the future, and such other and further relief to which Plaintiff is entitled because of the actions and/or omissions complained of herein.

## VI.

## <u>JURY DEMAND</u>

20.     Plaintiff respectfully requests a jury trial.

## VII.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that Defendant be cited to appear, and, that Plaintiff be awarded judgment against Defendant for statutory damages, compensatory, punitive and general damages, back pay, front pay and/or lost wages and benefits in the past and future, all actual monetary losses, liquidated damages, attorney's fees, expert witness fees, costs, prejudgment and post judgment interest, and such other and further legal and equitable relief to which Plaintiff is entitled.

Respectfully submitted,


IWU & ASSOCIATES

**/s/ Marshay Iwu**
Marshay Iwu
State Bar No. 24083204
P.O. Box 851553
Mesquite, Texas 75185-1553
Telephone: (214) 417-2738
Telecopier: (214) 272-3186
marshayiwu@lawyersdemandingjustice.com

**ATTORNEY FOR PLAINTIFF**